Case 4:15-cv-03708   Document 15   Filed in TXSD on 12/05/16   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
December 06, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRICKEY JUAN MANUEL, SR., (TDCJ-CID #02026549) | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. H-15-3708 |
| BRAD LIVINGSTON, *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

Brickey Juan Manuel, Sr., an inmate of the Texas Department of Criminal Justice-Estelle Substance Abuse Felony Punishment Facility-Gateway Foundation, sued in December 2015, alleging a denial of adequate medical care and a violation of the Americans with Disabilities Act. Manuel represents himself and has not prepaid the filing fees. He sues Brad Livingston, the former Executive Director of the TDCJ; Randall L. McLaurin, the Gateway Foundation Director; Elton Monk, a TDCJ physician's assistant; Mrs. Bluhm, a TDCJ nurse; and Mr. Mott, a medical administrator for the Gateway Foundation. The threshold issue is whether Manuel's claims can proceed further.

### I.     The Complaint Allegations

Manuel alleges that he had open-heart surgery in 2013 to implant a mechanical heart valve. He has seizures, hypertension, heart problems, and asthma. He was admitted to the TDCJ in October 2015. Manuel was seen by medical personnel in the Byrd Unit, the processing and diagnostic unit, on October 28, 2015. He was prescribed Warfarin, Metoprol, and Amlodipine, Albuterol, and Dilantin, and given a physical. On November 5, 2015, he was transferred to the Gateway Foundation

Substance Abuse Unit, where he was seen by Physician's Assistant Monk and Nurse Bluhm.

On December 15, 2015, Manuel alleged that he had a stroke and was transported to Memorial Hermann Hospital via Life Flight. He stayed there for four days and gradually regained the ability to speak and move. After he returned to the Estelle Unit, he had occupational therapy. He alleged that while at the Unit, the Gateway Foundation denied him his evening dose of Dilantin, the weekly or biweekly "international normalized ratio" for his mechanical heart valve to monitor the effects of the anticoagulants in order to detect any excess bleeding. Manuel alleged that the blood thinner blood-clot was checked once after 45 days and another time after 30 days, rather than biweekly.

Manuel alleges that the Gateway Foundation is violating the Americans with Disabilities Act because there are no accessible showers for people in wheelchairs. He alleges that Brad Livingston is liable because he is responsible for making the facility handicap-accessible. He alleges that the UTMB medical staff failed to provide him proper medications; that Physician's Assistant Monk denied him seizure medications from November 5 to December 2, 2015; that Nurse Bluhm refused his requests to be seen by a physician and failed to monitor his heart-valve tests; and that the medical personnel failed to provide him with the same medications he received while in Memorial Hermann Hospital. He alleges that he was instead prescribed generic medications that had side effects. Manuel alleges that Gateway Foundation Medical Administrator Mott failed to respond to his grievances or intervene to prevent the denial of medical care. Manuel finally alleges that Sergeant Robinson and Lieutenant Sutton, both guards, routinely harassed him.

Manuel alleges that he was seen by prison medical personnel in January and February 2016. He does not explain what treatment he received. Manuel alleges that in March 2016, he went to UTMB for a stress test, but the procedures were terminated when the medical personnel realized that

he had epilepsy. He alleges that when he returned to the Estelle Unit, he was rushed to the Huntsville Hospital for excessive bleeding from the rectum. Manuel alleges that the failure to monitor his blood levels caused this crisis. He also alleges that although he received medications for hypertension, they were not the right ones.

In his supplemental complaint, Manuel also alleges that the defendants are operating a "turnkey" system by allowing certain inmates to hold positions of authority over other inmates. (Docket Entry No. 10). He seeks an injunction compelling the defendants to allow him to seek free-world medical treatment and to participate in rehabilitative programs when he is able.

## II. Analysis

A federal court has the authority to dismiss a complaint in which the plaintiff is proceeding without prepaying fees if the court determines that the complaint is frivolous. 28 U.S.C. § 1915(e)(2)(B)(i). A complaint is frivolous if it lacks an arguable basis in law or fact. *See Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir. 2001) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998) (quoting *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).

"[I]nadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to [the prisoner's] serious medical needs, constitut[ing] the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999)(quoting *Estelle v. Gamble,* 429 U.S. 97 (1976)). Under the "deliberate indifference" standard, a prison official is not

liable for the denial of medical treatment "unless the official knows of and disregards an excessive risk to inmate health or safety." *Stewart*, 174 F.3d at 534 (citing *Estelle*, 429 U.S. at 104). While alleged malpractice and negligent treatment do not rise to the level of a constitutional tort, *see Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993), a claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can allege a claim of a constitutional tort. *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle,* 429 U.S. at 105-106).

To state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1460 (5th Cir. 1983), and that a prison official knew of and disregarded "an excessive risk to inmate health or safety." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)(quoting *Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994)(citing *Farmer,* 511 U.S. at 842 & n.8).

Deliberate indifference is an extremely high standard. An incorrect diagnosis by prison medical personnel does not state a claim for deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001) (citing *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985)). Rather, a plaintiff must allege facts showing that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that

would clearly evince a wanton disregard for any serious medical needs." *Johnson,* 759 F.2d at 1238. Whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle,* 429 U.S. at 107. The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer,* 511 U.S. at 838.

Manuel alleges that medical personnel failed to administer the same seizure medications he had been prescribed at a hospital and failed to properly monitor his blood levels and his hypertension. Manuel has not alleged facts supporting an inference that the medical care provided to him was so inadequate that the defendants knew of and were deliberately indifferent to a substantial risk to his health. His own pleadings show that he was regularly examined by medical personnel and prescribed medications. He was seen by medical personnel on numerous occasions and prescribed treatment and medications. The record shows an extended history of examinations, diagnoses, and medications. The allegations and record rebut any inference of deliberate indifference. *Mendoza v. Lynaugh,* 989 F.2d 191, 193-95 (5th Cir. 1993). "Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimizana,* 122 F.3d 286, 292 (5th Cir. 1997). Manuel concedes that medical personnel did check his blood levels and blood pressure, although not as frequently as he wanted, and did prescribe anticonvulsant, although not the medications he preferred. Manuel's denial of medical care claim lacks merit and is dismissed.

Manuel also alleges ADA violations. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2011). This provision applies to state prisons

and prisoners. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998) ("[T]he statute's language unmistakably includes State prisons and prisoners within its coverage.").

A prima facie case under the ADA requires a plaintiff to plead: (1) that he is a qualified individual within the meaning of the ADA; (2) that he is excluded from participation in, or denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against, by the public entity; and (3) that this exclusion, denial of benefits, or discrimination is because of his disability. *Hale*, 642 F.3d at 499. With respect to the first element, the ADA defines "disability" as: (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12012(1). Walking is a major life activity. 42 U.S.C. § 12012(2).

Manuel alleges that the Estelle Unit does not provide accessible showers for those in wheelchairs. "No handicap showers since I've been here 11/5/15, there horribly broken, has to shower in wheelchair, the people that in wheelchairs." (Docket Entry No. 9, Plaintiff's More Definite Statement, p. 2). He also alleges that the kitchen area is not accessible to inmates in wheelchairs. (*Id.* at 5). Liberally construed, he alleges he has been denied the benefits of the services, programs or activities of TDCJ, including access to the kitchen, in violation of 42 U.S.C. § 12132. He alleges that this has placed him in danger of serious injury. These allegations suffice for the second and third elements of a Title II claim. "Prison programs fall within Title II's scope," and Manuel has alleged that he was denied access to prison programs because of his medical conditions. *Hale*, 642 F.3d at 499.

However, it is unclear on the present pleadings whether Manuel was suffering from a

"qualifying disability" under Title II of the ADA. Manuel does not allege that he himself uses a wheelchair. Instead, he refers to other people who use wheelchairs. Manuel does not allege what physical impairment prevents him from walking without assistance. Nor does he allege a record of such an impairment or "being regarded as having such an impairment." In addition, Manuel has not alleged facts suggesting that the defendants had the subjective intent to discriminate against him because of his disability. Manuel's ADA claim is dismissed for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

Manuel finally alleges that the defendants are violating prison regulations by operating a "turnkey" system. The alleged failure to comply with prison regulations alone is not a constitutional violation. *Brewster v. Dretke,* 587 F.3d 764, 768 (5th Cir. 2009); *Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996) *(per curiam)* (TDCJ-CID's failure to follow its own administrative rules and regulations does not raise federal constitutional issues as long as minimal constitutional requirements are met). Manuel's due process claim based on a violation of prison regulations is dismissed.

There is an additional basis to dismiss the claims against Brad Livingston, former Executive Director of the TDCJ, and Randall L. McLaurin, Director of the Gateway Foundation. Manuel alleges that these defendants were responsible for operating the Estelle Unit and the Gateway Foundation, and that they should have been aware of the risk to his safety posed by medical personnel's conduct. Manuel has not alleged that these supervisory defendants were personally involved in any of the violations he alleges. Manuel seeks to impose liability on these defendants solely on the basis of their positions as ultimate supervisors. Individual liability under § 1983 may not be based on a supervisor's vicarious liability for the acts or omissions of employees. *Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 534 (5th Cir. 1997). Supervisory officials may be liable

only if their own action or inaction, performed with a certain degree of gross negligence or deliberate indifference, proximately causes a constitutional violation. *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). Manuel alleges that these supervisory defendants are liable for actions of their subordinate. These allegations fail to state a claim under § 1983. *See Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *Southard v. Tex. Bd. of Criminal Justice,* 114 F.3d 539, 551 (5th Cir. 1997); *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). Manuel's claim that prison employees were acting under the direction of these two supervisory defendants does not affirmatively link the prison employees' alleged misconduct to the supervisory defendants' actions. Nor does Manuel allege that the supervisory defendants' action or failure to act was the moving force behind his alleged harm, *see Monell,* 436 U.S. at 692-94; *Smith v. Brenoettsy,* 158 F.3d 908, 911 (5th Cir. 1998), or that the supervisors were aware of and disregarded a substantial risk to his safety. The claims against Brad Livingston and Randall McLaurin are dismissed.

This action lacks an arguable basis in law. The claims are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i). Manuel's motion to show violation of civil rights, construed as a motion to supplement complaint, (Docket Entry No. 10), is granted. Any remaining pending motions are denied as moot.

The TDCJ-CID must deduct 20 percent of each deposit made to Manuel's inmate trust account and forward payments to the court on a regular basis, provided the account exceeds $10.00, until the filing fee obligation of $350.00 is paid in full.

The Clerk will provide a copy of this order by regular mail, facsimile transmission, or e-mail to:

    (1)    the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin,

Texas, 78711, Fax: 512-936-2159;

      (2)    the Cheyenne Center, 10525 Eastex Frwy., Houston, TX 77093; and

      (3)    the District Clerk for the Eastern District of Texas, Attention: Manager of the Three-Strikes List, Lori_stover@txed.uscourts.gov.

SIGNED on December 5, 2016, at Houston, Texas.

                                                                          _____
                                                                          Lee H. Rosenthal
                                                                          Chief United States District Judge